Jerald WILSON *v.* CORNERSTONE MASONRY,
Firstcomp Insurance Company

CA 05-966                                    233 S.W.3d 161

Court of Appeals of Arkansas
Opinion delivered March 22, 2006

[Rehearing denied April 26, 2006.]

*Walker, Shock, Cox & Harp, PLLC*, by: *Eddie H. Walker, Jr.*, for appellant.

*Kenneth A. Olsen*, for appellee Cornerstone Masonry.

JOSEPHINE LINKER HART, Judge. Appellant, Jerald Wilson, appeals from the decision of the Arkansas Workers' Compensation Commission denying his claim for benefits. On appeal, he argues that substantial evidence does not support the Commission's conclusion that he failed to prove a compensable injury to his cervical spine. We reverse and remand.

Our workers' compensation statutes define a "compensable injury" as an "accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment. . . ." Ark. Code Ann. § 11-9-102(4)(A)(i) (Supp. 2005). When the Commission denies a claim for benefits because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if the Commission's decision displays a substantial basis for the denial of relief. *Cooper v. Hiland Dairy*, 69 Ark. App. 200, 11 S.W.3d 5 (2000). Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *Id.*

According to the Commission's opinion reversing the administrative law judge's (ALJ's) award of benefits, appellant was

involved in a motor-vehicle accident on July 23, 2003, while in the course and scope of his employment. Appellant was taken to the emergency room, where an x-ray of his cervical spine was found to be normal. The next day, however, appellant returned to the emergency room, where according to the medical records, he complained in part of neck pain at about the C7-T1 level. Following additional x-rays, he was assessed as having cervical strain, with a possible osteophyte fracture at about the C5 level.

Also as noted by the Commission, appellant returned to work on July 28, 2003, where he worked an average of eight to nine hours a day, with his duties including heavy lifting, bending, stooping, climbing, and stacking. In September 2003, appellant began suffering a recurrent burning sensation in his neck that by November 2003 became more frequent and intense. On November 4, 2003, he sought treatment from Dr. Robert Thompson. An MRI taken November 7, 2003, revealed a broad posterior disc protrusion at C6-7. Dr. Thompson opined that the herniated disc was "directly causally related to the accident." On December 11, 2003, Dr. Gregory Ricca examined appellant and recommended surgery at C6-7. Dr. Ricca opined that, within a reasonable degree of medical certainty, appellant's accident was the major cause of his ruptured disc and consequent need for surgery.

Appellant sought workers' compensation benefits. On appeal from the ALJ's award of benefits, the Commission found that appellant failed to prove that he sustained a compensable injury. In making its decision, the Commission found that appellant's testimony should be afforded little weight. The Commission wrote that "Dr. Ricca confirmed during his deposition . . . that his office would not continue to treat the claimant due to the claimant having requested that they make misrepresentations concerning his injury in order for state insurance to cover his pending surgery." The Commission stated that appellant's "willingness to make false representations to a state agency, and his attempt to persuade his doctor's office to participate in said fraud, weighs heavily against the claimant's overall credibility." The Commission concluded that, because of appellant's alleged willingness to commit fraud, appellant's testimony was not credible, and Dr. Ricca's medical opinion, which was based on a history given by appellant, should be given little weight.

On appeal, appellant argues that there is no substantial evidence to support the Commission's determination that he failed to prove he sustained a compensable injury to his cervical spine.

He argues in part that the Commission's determination that he attempted to defraud Medicaid and was therefore not credible was not supported by substantial evidence. We agree.

In regard to this issue, Dr. Ricca testified that his practice administrator, Dr. Sauthier, "had direct conversations with this patient and then discussed with me. There's some questions about the patient wanting us to charge Medicaid when we were unable to do so. I think Dr. Sauthier thought it was unethical. . . ." When asked if Dr. Ricca thought there was a problem with obtaining coverage through Medicaid when the coverage should be through workers' compensation, Dr. Ricca said,

> There can be. I think what I — and you might want to talk to Dr. Sauthier. She can give you the exact or more accurate information about her conversations. But what I had the impression from my conversations with Dr. Sauthier was that the patient was requesting us to misrepresent some of the information to help him get insurance coverage. I may be incorrect. . . . I may be incorrect in telling you that, but that was my impression from my conversation with Dr. Sauthier. . . . . I would suspect that's what it is, is that we had the impression it was job-related and could not get his company to pay for it. So he says, "Well, then say it's not job-related and get Medicaid to pay for it."

The Commission's conclusion that appellant committed fraud does not provide a substantial basis for the denial of benefits. Dr. Ricca's deposition testimony relied upon by the Commission is equivocal; Dr. Ricca repeatedly acknowledged that he may be incorrect about what occurred between appellant and Dr. Sauthier, who did not testify. Moreover, there is no evidence in the record indicating that it is in fact fraudulent to seek medical care through Medicaid when the employer refuses coverage. Furthermore, appellant testified that he was attempting to have the surgery paid through Medicaid. We defer to the Commission on issues involving the weight of the evidence and the credibility of witnesses, but while the Commission's findings on these matters may be insulated to a certain degree, its decisions are not so insulated as to render appellate review meaningless. *Id.*; *Lloyd v. United Parcel Serv.*, 69 Ark. App. 92, 9 S.W.3d 564 (2000). In sum, there was no evidence of fraud that would support the Commission's denial of benefits based on a finding that appellant was not credible.

■ Also, in denying benefits, the Commission stated that the weight of the "objective medical evidence" failed to establish that appellant suffered a herniated disc as a result of his accident. The Commission noted that appellant's initial x-rays and MRI showed normal results, that it was not until November that an MRI showed a herniated disc, and that it was "very unlikely that the claimant could have continued to engage in the type of strenuous activities that he did for months after his accident had he sustained a herniated disc at the time of his accident," noting further that appellant did not seek medical attention during the time following his accident, despite his worsening symptoms. These conclusions are not supported by any medical evidence and also do not constitute a substantial basis for the denial of benefits. We note that the medical records do not indicate that an MRI was taken of appellant's spine prior to November 2003. Further, when questioned about appellant's working for two months following the accident, Dr. Ricca testified,

> One can rupture a disc and get pressure on the spinal cord and have no symptoms for some time period. And the reason why is this spinal cord might be able to accommodate the pressure, and then over time the spinal cord starts to decompensate and then becomes symptomatic. So it is very reasonable that he sustained a significant injury to his neck, disc rupture, pressure on the spinal cord that was not identified or did not present itself till September as burning pain.

Moreover, we note that appellant testified that he did not visit the doctor until November because "I didn't feel that I was really severe or anything until I started losing feeling in my arm. I thought it was just a pain and I really wasn't concerned until I started losing feeling in my arm and hand." He stated that the burning sensation in his neck "would come and go and it didn't last for long periods of time, but when I started losing the feeling in my hand and arm, that was when I really became concerned." In sum, given this evidence, and the lack of evidence to the contrary, the Commission's conclusions are not supported by substantial evidence.

Thus, we conclude that the Commission's opinion does not display a substantial basis for the denial of relief. Reasonable minds could not reach the Commission's decision to deny benefits where the Commission reached its rationale based solely on conclusions not supported by the evidence and where there is no testimony or

other evidence in the record that supports the denial of benefits. Accordingly, we remand for an award of benefits.

Reversed and remanded.

VAUGHT and ROAF, JJ., agree.